Kathleen E. Beatty, Esq.
Kathleen Law P.C.
Chrysler Building
405 Lexington Avenue, 26th Floor
New York, NY 10174
(917) 979-2392
Fax (347) 296-3767
kathleen@kathleen-law.com

December 2, 2024

<u>VIA ECF</u>
Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square, Room 2203
New York, NY 10007

Re:   *Nicolas Millan v. Veoride, Inc.*
      Docket No.: 23-cv-3506

Dear Judge Abrams,

The undersigned represents the plaintiff in the above-captioned matter. Counsel for all parties to this action have conferred and agreed to submit this joint letter regarding discovery.

## Plaintiff's position

This action is to recover monetary compensation for serious personal injuries sustained by plaintiff on December 31, 2021, when the defendant's electric scooter malfunctioned. The throttle became stuck at full speed, causing plaintiff to fall. Although the brakes were pressed, they did not stop or slow the scooter. Defendant contended that the application stopped the scooter at or around the time of the fall because his account ran out of funds. Plaintiff's causes of action are based on, *inter alia*, design defect, negligence, and failure to warn.

On June 16, 2023, plaintiff demanded the following:

- Records of complaints about the scooters, instructions, mechanics, or any dangerous conditions for three years prior to the date of the incident to the present.
- Records of prior similar incidents involving the same or similar scooter, whether in that location or elsewhere, including but not limited to any equipment malfunction or claim of throttle defect, for the three years prior to the date of the incident to the present.
- Work orders, purchase orders, and invoices for maintenance, inspection, servicing, and/or repair of the product for the three years prior to the date of the incident to the present.

1

This discovery pertains to the defendant's notice of a dangerous condition prior to the incident, one of the prongs of negligence. Defense counsel advised that the subject scooter was placed back into service after plaintiff's incident, in March 2022, and then taken out of service and placed back into service on July 25, 2023. Defendant did not inspect the scooter right after the incident and did not know whether the condition of the scooter was the same when the inspection was done as when it caused plaintiff to fall and become injured. Therefore, this discovery also pertains to the condition of the instrumentality that caused the incident at the time of the incident and prior to any modification, and to show that the condition was dangerous. To the extent it is necessary, plaintiff intends to question defendant's employees about the records at a deposition.

Plaintiff agreed to limit the demands to records pertaining to the throttles, brakes, and application malfunctions, but has always maintained the requests for records from all other markets with the same or similar conditions from the three years prior to the date of the incident to the present.

Defendant contended that searching for additional records was time consuming and difficult. Defendant initially only produced a spreadsheet list of complaints about sticky throttles from a single market (Bronx, New York) from a four-month period (August 19, 2021 through December 31, 2021). The spreadsheet contains forty customer complaints about throttles sticking. The notes indicate that the vehicles were inspected each time. In some cases, defendant denied there was a throttle issue and re-deployed the device. In at least one case, the device was repaired and redeployed.

It did not become apparent until recently that outstanding discovery is necessary and could easily be produced. Plaintiff questioned defendant's witnesses at depositions on May 23, 2024 and June 20, 2024 about the list of stuck throttle complaints produced, but they worked in different departments and were not familiar with it. The deposition of customer service department manager David Reese on November 18, 2024 confirmed that the records are electronically stored. The search functions like google and results are provided in batches of twenty. Screenshots of the results can be taken. He has never performed such a search before and is not aware of anyone who has ever conducted a search like this before. He does not know how long it will take. Defendant's witnesses admitted that stuck throttle complaints had been made, but could not recall how many times, when they were made, or what was done about them.

On November 26, 2024, defendant produced additional stuck throttle complaint records from Bronx, New York from the four-month period prior to and including the date of the incident. However, none of the corresponding records have been provided. Witnesses produced for defendant testified that after customers complained, the complaints and accident reports would be relayed to the operations team. Significant injuries would be listed in a spreadsheet, which included the date the incident happened, the ticket number, pertinent information, date of incident, time of incident, a description of the incident, when the vehicle was reported, and when the vehicle was retrieved by operations. The devices would be picked up by the staff for servicing and repair records would be made including the date, vehicle number, and name of the individual who performed the work.

Plaintiff maintains the aforementioned requests for records from three years prior to the incident to the present from all markets. See e.g. *Poulin v. Bos. Sci. Corp.,* 2024 U.S. Dist. LEXIS 213264 (WDNY 2024) and *Matter of Burnett v. Paul,* 52 A.D.3d 510, 859 N.Y.S.2d 680 (2nd Dept. 2008), wherein the courts held that records from five years prior to the incident should be disclosed. See also *Timothy Mc. V. Beacon City Sch. Dist.*, 127 A.D.3d 826 (2nd Dept. 2015) and *Kelly G. v. Board of Educ. Of City of Yonkers*, 99 A.D.3d 756 (2nd Dept. 2012), which establish that records of prior complaints of a dangerous condition and prior similar incidents relate to liability. See also e.g. *Albino v New York City Hous. Auth.,* 52 AD3d 321, 321, 860 NYS2d 57 (1st Dept. 2008); *Francklin v New York El. Co., Inc.,* 38 AD3d 329, 329, 832 NYS2d 180 (1st Dept. 2007); *Kaplan v Einy,* 209 AD2d 248, 252, 618 NYS2d 777 (1st Dept. 2000); and *Reyes-Nunez v. State of New York*, 66 Misc. 3d 728 (Ct. of Claims 2019) which show that post-accident records are discoverable for multiple purposes, even when ownership and control are not in dispute: to show the condition of the instrumentality that caused the accident at the time of the incident and prior to any modification, as well as to show that a particular condition was dangerous.

Plaintiff has diligently pursued this discovery by sending numerous emails and calling to follow up. Throughout the course of this litigation, plaintiff has actively sought discovery that is relevant, without taking more than is necessary, to avoid a burdensome process. As soon as it became apparent that these documents are needed because the witnesses did not recall complaint details, and it became clear that the documents could easily be turned over, plaintiff raised the issue with counsel and the court. Plaintiff never waived this discovery, but had to go through the appropriate channels of getting answers to basic questions about the documents already produced and the defendant's liability before involving the court, so as to avoid wasting its precious resources.

Separate and apart from those issues, there is more outstanding discovery, which does not appear to be in dispute.

Defendant agreed to search for brake and application complaints in the NYC market for the period previously searched, but has not produced those records.

Defendant previously agreed to produce the last known address of Stevon Smith, who was apparently the last staff member to service the device in question before the incident occurred. However, that has not been produced.

During the testimony of David Reese on November 18, 2024, it became apparent that defendant's responses to plaintiff's discovery demands were incomplete. As such, a deficiency letter was served on November 27, 2024.

Given that this discovery is outstanding, plaintiff respectfully requests an order compelling defendant to produce all outstanding paper discovery by December 31, 2024.

Plaintiff requests an extension of deadlines as follows:

- Deadline to complete depositions: January 31, 2025
- Completion of fact discovery: February 28, 2025
- Plaintiff's Expert Disclosures due by March 31, 2025

3

- Defendant's Expert Disclosure Due by April 30, 2025
- Expert Depositions Completed by May 30, 2025

To the extent plaintiff's application is not granted, plaintiff requests the opportunity to submit a full briefing to the court in the form of a motion.

### Defendant's Position

a. *The Incident and Testing of the Scooter.*

This action arises out of an incident that occurred on December 31, 2021, when plaintiff allegedly fell from a Veo scooter and was injured. At the time of the incident, plaintiff asked for a small credit to his account. After plaintiff reported his incident, the scooter he was riding was taken off line so it could not be ridden by anyone else, and picked up by the operations team in the New York area. It was then brought to the desk of Larry Rosman, the head of Veo's New York operations team. When Mr. Rosman returned after the New Year, as he testified, he tested the scooter and it worked perfectly and exactly as designed. Nevertheless, the scooter was taken out of service for a period to see if plaintiff would be pursuing an action. When that did not occur for some time, the scooter was put back into service and then pulled out again after this action was started.

Documents regarding the scooter at issue have been produced in this case, and those documents show that no mechanical work was ever performed on the subject scooter. The only time it was ever touched by a Veo employee (other than when it was pulled out of service after Mr. Millan's complaint) was to replace the battery when the charge on the battery got low. When batteries are replaced, the New York operations team looks over a scooter to make sure it appears to be in working order and the throttle and brakes are tested to ensure they are operating correctly. Again, this scooter never had any issues with the throttle and brakes during any of these checks and it never had any maintenance work performed on it.

b. *The Scooter's Design.*

Rick Kao, who as Veo's Hardware Product Manager is the top technical person at Veo, was deposed in this case. Mr. Kao testified that the only way the throttle system on a Veo scooter will not perform as designed is if parts are broken or damaged. When parts get damaged, which can occur when scooters are dropped or slammed onto the road or sidewalk, throttle components can be moved from their as designed position, which can cause the parts to hang up on each other and the rider to experience a stuck throttle. If that were to occur, the scooter can still be stopped with the brakes and a rider can safely get off of the scooter. In addition, if this were to occur, the condition cannot fix itself and the scooter will need to be removed from the field and the throttle components will be replaced. None of this occurred with the subject scooter.

c. *Information on Veo.*

Veo is a small company that currently operates in a little over 30 markets. Its headquarters are in Santa Monica, California, where it has a total of about 35 employees. Veo qualifies as a Small Business under the Internal Revenue Code and the NAICS code. Veo has no internal legal department or legal professionals. Veo's customer support team consists of one manager, David Reese, who was recently deposed, and seven customer service representatives who address customer support issues that arise in any of Veo's markets.

  d. *Discovery in this Case.*

Discovery has been a moving target in this case. From the outset and given plaintiff's voluminous and very broad discovery requests, Defendant has tried to work with plaintiff to reach an agreement to provide plaintiff's counsel with what she was looking for without overwhelming Veo's limited internal resources. With regard to the issues that are the subject of this letter, there were numerous calls between plaintiff's counsel and Veo's then counsel regarding the scope of searches to be conducted. As a result of those discussions, it was agreed that Veo would search for "stuck throttle" complaints in the New York market from the time it entered that market up until the date of the incident, December 31, 2021. The incident date was selected as the end date as plaintiff's counsel wanted to try to show that Veo had "notice of a dangerous condition", just as she indicated in this letter. Following the agreement on the scope of the search, responsive documents were produced in the latter part of 2023, and depositions of Veo personnel were conducted in May and June, 2024.

Following the depositions, plaintiff's counsel sought the production of additional documents, which Veo gathered and produced, and counsel for the parties had meet and confer calls about discovery issues. At no point during these calls did plaintiff's counsel ask for the type of wide ranging discovery she is now seeking. Instead, plaintiff's counsel asked for production of stuck throttle complaints in the New York marketplace for the same period previously used, for a different model of scooter, that had a similar throttle system as the scooter plaintiff was using. She also asked for design drawings for the other scooter model and additional testing documents, all of which were produced. None of the discussions involved searching for stuck throttle complaints from every market served by Veo for a period of about six years (three years before the December 31, 2021 up until the present). In addition, none of the discussions, with Veo's current counsel or predecessor counsel, involved the brakes or "application malfunctions".

Indeed, despite receiving Veo's documents more than a year ago and with the close of discovery fast approaching, plaintiff's counsel waited until very recently to raise the issue of searching for additional stuck throttle complaints, as well as brakes and application malfunctions. In an effort to find a compromise, Veo offered to search for customer complaints of brake and application malfunctions in the New York market for the same period of time previously agreed to. Plaintiff did not agree to this proposal, and instead pursued the issues now before the Court.

  e. *The Proposed Scope of Discovery Would Be Overwhelming for Veo.*

Searching all of Veo's markets for throttle, brake and application related complaints would be extremely time consuming for Veo. As indicated above, Veo is a small company with very few employees at its headquarters. A search for common terms like throttle, brakes and

5

applications would likely generate a large number of "hits", each of which would need to be reviewed to ensure that it was responsive. Veo estimates that it would take many months to accomplish a search like that.

Such a search would not be proportional to the needs of this case. Plaintiff's counsel has indicated she wants the information to show that Defendant had "notice" that a throttle could get stuck. However, Mr. Kao has already testified that such an event could occur if parts are damaged or dislodged. Moreover, a complaint from another market would add nothing of value to this case, and likely lead to more costly and unnecessary discovery. Such a complaint would be made to Veo's customer support team, which complaint would be hearsay and inadmissible. The only way to get such evidence before a Jury would be to track down the complaining party and depose them, and hope that somehow that person recalls the condition of the scooter. This type of costly needle in a haystack discovery simply is not proportional to the needs of this case.

  *f.* *The Parties Should Be Ordered to have a Meaningful Meet and Confer.*

If the Court is not willing to deny Plaintiff's request outright, the parties should be ordered to have a meaningful meet and confer. Counsel for the parties have been able to reach agreements on discovery previously, and it is hopeful that they can again. However, given the production of additional documents last week in an attempt to reach agreement followed by the Thanksgiving break, the parties have not had a chance to further discuss the issues prior to the submission of this letter.

If a compromise cannot be reached, and given the significance of the time and costs involved to Veo, Veo believes that these issues should be fully briefed through a motion.

We thank the court for the time and consideration of this request.

Very truly yours,<br><br>/s/ Kathleen E. Beatty

Cc: John Wackman, Esq.
   Nilan Johnson Lewis
   Attorneys for Defendant
   250 Marquette Avenue South, Suite 800
   Minneapolis, MN 55401
   (612) 305-7500

As this matter has now been referred to Magistrate Judge Willis for general pretrial purposes, the issues raised in this letter should be addressed to her. Judge Willis will oversee efforts to settle this matter as well.

SO ORDERED.

Hon. Ronnie Abrams
December 3, 2024